IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIDNEY Z. M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 20 C 6617 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Sidney Z. M. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff applied for DIB and SSI on February 14, 2018, alleging in both applications that she became disabled on February 1, 2016, due to Asperger's syndrome, severe post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, major depressive disorder, and bipolar disorder. (R. 20, 199, 218). Born in 1990, Plaintiff was 27 years old at the time of her applications and was at all times a younger person (under age 50). (R.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

196); 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). She lives alone in an apartment, received her GED, and completed two years of college. (R. 46-47, 219). Between October 2012 and August 2015, Plaintiff worked in sales, retail, grocery, warehouse, and temp positions. (R. 219, 234). In October 2015, she reached a workers' compensation settlement with a former employer over a 2013 head injury that resulted in posttraumatic headaches. (R. 252-53). Though Plaintiff tried working part-time starting in February 2016, the job did not amount to substantial gainful activity and she has not held any other position since June 2016. (R. 234, 240, 272).

The Social Security Administration denied Plaintiff's applications initially on October 9, 2018, and again upon reconsideration on March 6, 2019. (R. 76-125). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Edward P. Studzinski (the "ALJ") on January 29, 2020. (R. 41). The ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Plaintiff's mother and vocational expert Pamela Nelligan-Tucker (the "VE"). (R. 43-75). On March 6, 2020, the ALJ found that Plaintiff's personality disorder, depression, and anxiety are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23-26). After reviewing the evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels with numerous environmental and non-exertional restrictions. (R. 26-34).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC could not perform Plaintiff's past relevant work in retail sales but could perform a significant number of other jobs available in the national economy, including laundry

2

worker and cleaner polisher. (R. 35). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the February 1, 2016, alleged disability onset date through the date of the decision. (R. 35-36). The Appeals Council denied Plaintiff's request for review on September 14, 2020. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) improperly discounted her subjective statements regarding her symptoms; and (2) failed to consider the limiting effects of her seizures in determining the RFC. For reasons discussed in this opinion, the Court finds that the case must be remanded for further consideration of the effect Plaintiff's mental impairments have on her ability to comply with medical treatment.

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will reverse an ALJ's

determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.   Five-Step Inquiry**

To recover DIB or SSI, a claimant must establish that she is disabled within the meaning of the Social Security Act.[2] *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must

---

[2]   Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

4

conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.    Analysis**

    **1.    Subjective Statements**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in assessing her subjective statements regarding her symptoms. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27

5

F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff testified at the January 29, 2020 hearing that she was living alone in an apartment a couple of miles from her mother and spoke to her mother every day. (R. 46). She had previously lived alone in an apartment further away but moved closer to family because she was doing "really, really bad" and "having a lot more freak outs." (R. 57). Both apartments were paid for by Plaintiff's grandmother. (R. 58). Plaintiff obtained a GED and attended some college but was unable to finish because it was too stressful and she could not keep up with the workload. (R. 47). The longest job Plaintiff ever held was at La-Z-Boy doing sales and customer service for a year and a half. (*Id.*). Most recently she worked packing boxes onto pallets until she was fired due to an inability to remember stack patterns well. She was also fired from jobs at a Jewel bakery and Jiffy Lube because she could not remember the required baking temperatures or the prescribed sales script. (R. 48-49).

According to Plaintiff, the primary reason she cannot work is depression and anxiety, including panic attacks lasting an hour or two where she "play[s] out scenarios in [her] head" and "end[s] up spiraling and . . . then eventually I end up yelling . . . and my mom tries to calm me down and it doesn't really work out too well." (R. 49-50, 56-57). Plaintiff also suffers from paranoia, fear of someone coming into her home, lack of

6

motivation, and feelings of worthlessness. (R. 49-51). Her mother helps her with the shopping because she tends to "freak out" in public and does not leave the apartment more than once every couple of weeks due to a fear of running into people. Her mother also assists with chores, cooking, and caring for Plaintiff's cats. (R. 51, 53). Most of the people Plaintiff interacts with are online. (R. 55). During the day, Plaintiff reads and takes care of her cats. (R. 56) ("I'm generally just like making sure that his box is like to his liking and stuff and I have to . . . try to maintain the feeding schedule for him."). Occasionally she will make a bulk meal for herself that lasts a few days but otherwise her mother brings meals over to her. (R. 59).

In discounting Plaintiff's subjective statements, the ALJ first found it significant that she was not consistent with treatment. The ALJ's analysis fails to consider the Seventh Circuit's admonition that "an ALJ's minimum duty to consider possible explanations for noncompliance issues – before drawing a negative credibility inference – is heightened with claimants that have significant mental impairments." *Larry L. v. Kijakazi*, No. 1:20-CV-3298-JPH-MPB, 2022 WL 3637109, at *6 (S.D. Ind. Aug. 2. 2022) (citing *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011)). Plaintiff has been diagnosed with several mental impairments, including: PTSD; major depressive disorder, recurrent and severe; generalized anxiety disorder; mood disorder; severe personality disorder; and borderline personality disorder. (R. 377, 425, 560, 636-37). From September 9, 2016, through May 26, 2017, Plaintiff attended some 50 sessions with various mental health care providers and social workers through DeKalb Behavioral Health, including individual therapy, crisis intervention, and medication monitoring. (R. 28-30, 337-508). Plaintiff was routinely depressed, anxious, tearful or crying, and nervous, with irrational thoughts and suicidal

7

ideation. (R. 337, 381, 393, 395, 399, 401, 403, 409, 411, 413, 415, 419, 421, 426, 428, 430, 432, 434, 438, 454, 462, 464, 472, 474, 476, 478, 480, 486, 498). She reported a history of sexual abuse from ages 12 to 15, described multiple thoughts/acts of self-harm, and discussed her ongoing transition from male to female. (R. 337, 399, 405, 409, 458, 474, 476, 486, 488). At some sessions Plaintiff covered herself with a "comfort scarf" or hoodie, and held onto a stuffed animal. (R. 389, 395, 401, 403, 405, 409, 419). She talked about hearing voices, feeling paranoid, feeling out of control, and experiencing panic attacks and dissociations/hallucinations. (R. 413, 415, 422, 438, 440, 456). Her coping methods included drugs (marijuana and MDMA) and alcohol. (R. 498, 506, 508).

Between August 9, 2017, and January 2, 2018, Plaintiff was hospitalized three times for a total of 26 days due to suicidal ideations. Though Plaintiff improved during her first hospitalization in August 2017, she relapsed after discharge because she failed to take prescribed medication due to feelings of hopelessness, and then went on a week-long drinking binge. (R. 515-19, 631, 685). Upon her second hospitalization in October 2017, doctors diagnosed Plaintiff with a severe personality disorder requiring long-term outpatient therapy, and noted that "[t]his is a complicated and difficult case." (R. 637, 675). Plaintiff relapsed again after her October 27, 2017, discharge, and at the time of her third hospitalization in December 2017, she had stopped taking her medications, had been using marijuana daily, and was experiencing homelessness. (R. 786). Once she went back on her medications, Plaintiff improved and was discharged in stable condition on January 2, 2018. (R. 803).

The ALJ did not acknowledge that failure to take medications and continue with therapy is a common problem with certain mental impairments. *See Ashley R. v. Kijakazi*,

No. 1:20-CV-2817-TWP-TAB, 2022 WL 574984, at *5 (S.D. Ind. Feb. 25, 2022) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) ("Due to various limitations (such as language or mental limitations), an individual may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment."). Here, counselors repeatedly observed that Plaintiff had poor judgment and limited insight into her condition, and Plaintiff said on multiple occasions that taking medications and talking to therapists was not helpful even though she generally improved with both interventions. (R. 261, 270, 452). The ALJ should have at least considered whether Plaintiff's resistance to treatment was a symptom of her illness as opposed to evidence that her complaints of poor functioning were not credible.

It is true that from January 2, 2018, until July 2019, Plaintiff did not receive any additional treatment. And the ALJ correctly observed that this did not result in further hospitalizations. (R. 32). But Plaintiff's mother testified that she had difficulty finding a counselor who would accept Medicaid, and Plaintiff stated that she did not want to leave the house for care in any event. (R. 54, 66). Contrary to the ALJ's assertion, moreover, Plaintiff's symptoms did worsen without treatment, prompting her to restart therapy in July 2019. (R. 54). Those sessions revealed Plaintiff continued to suffer from anxiety, panic attacks, and disorientation, and by October 2019 she was experiencing delusional thinking and increased symptoms of anxiety and paranoia. (R. 827, 829, 832, 833, 837). Following a Psychiatric Evaluation on October 18, 2019, Plaintiff was placed on Zyprexa for her paranoia, delusions, and audio-visual hallucinations. (R. 843). Plaintiff's condition improved over the next several weeks but by December 4, 2019, she was once again

9

resisting treatment, telling her counselor that "I don't actually have to be here. I am just here for disability." (R. 857). Since the ALJ did not entertain the possibility that Plaintiff's mental impairments, including severe personality disorder, affected her ability to pursue treatment consistently, this Court cannot be certain that the ALJ properly assessed Plaintiff's testimony.

Viewing the record as a whole, the ALJ did not provide adequate support for his decision to reject Plaintiff's statements regarding the limiting effects of her conditions, or build an "accurate and logical bridge" between the evidence and this conclusion. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). This error precludes a finding that the decision is supported by substantial evidence, and Plaintiff's motion to remand the case is therefore granted.

### 2. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments, but the ALJ should take the opportunity on remand to review Plaintiff's RFC and consider whether her seizures and/or pseudo-seizures impact her functioning.

### CONCLUSION

For reasons stated above, Plaintiff's Motion for Summary Judgment [19] is granted, and Defendant's Motion for Summary Judgment [25] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: January 30, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge